JOHN W. DAVIS *vs.* BOSTON AND NORTHERN STREET RAILWAY
COMPANY.

CHARLES F. WOODWARD, administrator, *vs.* SAME.

Middlesex.     November 21, 1912. — February 27, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* Imputed, In use of highway, Street railway, Gross.

If a buggy is run into from behind by a street railway car by reason of negligence
of the motorman and injuries are received by one, who, at the invitation of the
driver in the buggy and without compensation, is seated by his side and is hold-
ing a rope by which a horse that the driver has sold is being led behind the
buggy to be delivered to the purchaser, the mere fact that at the time of the
accident the driver was not in the exercise of due care will not prevent recovery
by the guest from the corporation operating the street railway, where it ap-
pears that the guest neither owned nor exercised any control over the horse and
buggy.

In an action against a street railway company under St. 1906, c. 463, Part I, § 63,
for the death of the driver in a buggy run into from behind by a car of the de-
fendant, there was evidence tending to show that in the night-time the driver in
the buggy, when no car was in sight, drove upon the tracks of the defendant
where there were on each side of the tracks excavations made by a city in the
laying of water pipes and marked by lighted lanterns, that, hearing the whistle
of a car approaching from the rear, the driver urged his horse forward until he
attained a speed of from fifteen to eighteen miles an hour in order to reach the
end of the excavations so that he could resume travel in the roadway, that for
a distance of at least three hundred and fifty feet the buggy was in sight of the
motorman of the approaching car, that the car struck the buggy so violently
as to throw the buggy fifty-one feet and demolish it, to throw the horse sixty-
five feet and kill him and to cause the death of the driver. *Held,* that there
was evidence for the jury on the questions, whether the driver was in the exer-
cise of due care and whether the motorman was operating the car at a speed
which under the circumstances constituted gross negligence on his part.

TWO ACTIONS OF TORT, the first action being for personal injuries
received by reason of a street railway car of the defendant in the
night-time running into the rear of an open Concord buggy in
which the plaintiff in the first case was riding by invitation of the
driver, one David H. Woodward, the intestate of the plaintiff in
the second action; and the second action being under St. 1906,
c. 463, Part I, § 63, for the death of Woodward caused by the
collision. Writs dated September 24, 1907.

In the Superior Court the cases were tried together before *Bell*, J. It appeared that at the time of the collision Woodward and Davis were on a journey from Melrose to Gloucester to deliver a horse which Woodward had sold, and which was being led behind the buggy, Davis holding him. The place of the collision was on Highland Avenue in Salem and at the time of the accident there were excavations on both sides of the defendant's tracks, with lanterns placed as warnings.

There was evidence tending to show that, when the car struck the buggy, the horse in the shafts was thrown sixty-five feet and killed, the buggy was thrown fifty-one feet and completely demolished, and the car still continued for a distance of two hundred and ninety feet beyond the point of collision.

Other facts are stated in the opinion.

At the close of the evidence the defendant asked that a verdict be ordered for it in each case. In the first case, the request was refused and the jury found for the plaintiff in the sum of $4,500. The defendant alleged exceptions. In the second case the request was granted; and the plaintiff alleged exceptions.

*E. P. Saltonstall*, for the defendant.

*G. L. Mayberry*, for the plaintiffs.

BRALEY, J. The personal injuries suffered by the plaintiff in the first action, and the death of the plaintiff's intestate, David H. Woodward, for which the second action is brought, are alleged to have been caused concurrently through the negligence of the defendant's motorman. It being clear from the record, as conceded by the defendant, that if the plaintiff's theory as to the manner in which the accident happened was adopted by the jury there was such evidence, the only question calling for discussion in the first case is whether the plaintiff used due care.

There is no occasion to recite at length the somewhat voluminous and contradictory testimony. The plaintiff Davis could have been found not to have exercised any control over the horse and buggy owned and driven by the intestate, even if he held the rope by which the other horse in the rear of the buggy was led. If this assistance was necessary the jury might be satisfied that the service was gratuitous, and that in no sense did he participate in the performance of the contract to deliver the horse to the purchaser, for which purpose the intestate had undertaken the

journey and asked Davis to accompany him. It would follow that, even if the intestate was careless, Davis could be found not to have been at fault, and this would be sufficient to enable him to recover upon proof of the defendant's negligence. *Shultz* v. *Old Colony Street Railway*, 193 Mass. 309.

But the jury would have been warranted in finding further, that the intestate himself acted with ordinary prudence. By reason of the excavation required for the laying of water pipes by the city, and to avoid the open trench, it became necessary to pass over the defendant's tracks laid in the roadway. At the time of entering upon the tracks no car was in sight, and where a car comes up from behind as in the present case, if the driver of the carriage turns off as soon as may be reasonably possible after he is aware of the car's approach, the question of his due care generally is for the jury. *White* v. *Worcester Consolidated Street Railway*, 167 Mass. 43. *Vincent* v. *Norton & Taunton Street Railway*, 180 Mass. 104. *O'Brien* v. *Blue Hill Street Railway*, 186 Mass. 446.

It appeared in the evidence for the plaintiffs, that while driving slowly because of the restricted space, the sounding of the whistle was the first and only warning received before the collision. It is maintained by the defendant, that when thus warned instead of urging his horse to a speed estimated at fifteen or eighteen miles an hour in an effort to escape, as the jury could find, or racing with the car as counsel urge, the intestate at once should have turned off from the track. But if the buggy had not reached the end of the trench, as the plaintiff's evidence tended to show, where it safely could have done so, whether the conduct of the intestate in increasing speed to get out of the way evinced the care or the lack of it of the ordinarily prudent driver when beset with similar difficulties, was a question of fact. It certainly could not have been ruled as matter of law, that the occupants of the buggy either before or after the whistle sounded were bound to anticipate being run down from the rear. *LeBlanc* v. *Lowell, Lawrence, & Haverhill Street Railway*, 170 Mass. 564. *Hatch* v. *Boston & Northern Street Railway*, 205 Mass. 410. *Morrissey* v. *Boston Elevated Railway*, 210 Mass. 424.

The evidence also would have warranted the jury in finding that the motorman was guilty of gross negligence under St. 1906,

c. 463, Part I, § 63, which was in force when the intestate was killed. It was in evidence that the car was being run over a substantially straight track at a speed in excess of the rate permitted by his instructions, and the motorman admitted that the buggy was in sight for a distance of at least three hundred and fifty feet before the collision. The impact was so violent as to kill the horse in the shafts, cause the death of Woodward, and demolish the buggy. The motorman knew or could be found to have known of the unusual conditions of public travel arising from the laying of the water pipes, and he was called upon to use the degree of care the circumstances required. *Horsman* v. *Brockton & Plymouth Street Railway,* 205 Mass. 519. *Nelson* v. *Old Colony Street Railway,* 208 Mass. 159. The car was under his control, and the jury could say that the speed was dangerously excessive. To run a passenger car used for interurban travel at such velocity, where, as the jury could find, he saw or should have seen the carriage ahead with the driver urging his horse in order to clear the tracks, and coming into collision with it, causing the results described, showed a disregard for the safety of travellers concurrently using the street, which the jury could say amounted to gross carelessness. *Spooner* v. *Old Colony Street Railway,* 190 Mass. 132. *Mullins* v. *New York, New Haven, & Hartford Railroad,* 201 Mass. 38. *Berry* v. *Newton & Boston Street Railway,* 209 Mass. 100. *Santora* v. *New York, New Haven, & Hartford Railroad,* 211 Mass. 464. *Brown* v. *Thayer,* 212 Mass. 392.

A verdict for the defendant in the first case could not have been ordered and its exceptions must be overruled, and the plaintiff's exceptions in the second case must be sustained and a new trial granted.

*So ordered.*